IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| DORA JEPPESEN,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER ON ADMINISTRATIVE APPEAL<br><br><br><br><br>Case No. 1:10-CV-107 TS |

This matter comes before the Court on Plaintiff Dora Jeppesen's appeal from the decision of the Social Security Administration denying her applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Having considered the arguments set forth by the parties, reviewed the factual record, relevant case law, and being otherwise fully informed, the Court will reverse the administrative ruling, as discussed below.

1

## I.  STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied.[1] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]  The ALJ is required to consider all of the evidence, although he or she is not required to discuss all of the evidence.[3]  If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[4]

The Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[5]  However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the ALJ's.[6]

Plaintiff raises three arguments in her brief: (1) the ALJ erred at his step five determination; (2) the ALJ improperly rejected the opinions of Plaintiff's treating and examining medical providers; and (3) the ALJ improperly rejected Plaintiff's subjective complaints.  As will be discussed below, the Court agrees that the ALJ failed to properly address the opinions of Dr. Gregoire and will reverse and remand this matter.

---

[1]*Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2]*Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

[3]*Id*.

[4]*Richardson v. Perales*, 402 U.S. 389, 402 (1981).

[5]*Shepard v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[6]*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

## II.  BACKGROUND

A.    PROCEDURAL HISTORY

Plaintiff filed her applications for SSI and DIB on April 12, 2007, alleging an onset date of March 21, 2007.[7]  The applications were denied initially and upon reconsideration, and a hearing was requested.[8]  A hearing was held before Administrative Law Judge ("ALJ") Donald R. Jensen on December 10, 2008.[9]  The ALJ issued his decision on January 29, 2009, finding that Plaintiff was not disabled.[10]  The Appeals Council denied Plaintiff's request for review,[11] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

B.    MEDICAL HISTORY

1.    *Physical Health*

Plaintiff injured her back in 2005 after lifting a barrel of wet clothing at work.[12]  Plaintiff received physical therapy, but continued to complain of pain.[13]

---

[7]R. at 151, 159.

[8]*Id*. at 78, 87, 90.

[9]*Id*. at 1, 64.

[10]*Id*. at 64-74.

[11]*Id*. at 138, 141.

[12]*Id*. at 295.

[13]*Id*. at 295, 301-15.

Plaintiff first presented to Alpine Spine, Sports, and Rehabilitation on January 11, 2006.[14] Plaintiff complained of neck and mid-back pain.  X-rays revealed some mild disc dessication.[15] Strength and range of motion were both normal.[16]  Plaintiff was referred to physical therapy, given medication, and certain work-related conditions were imposed.[17]

On February 8, 2006, Plaintiff returned to Alpine Spine, Sports, and Rehabilitation reporting no improvement.[18]  An MRI of the thoracic spine was normal.[19]  Range of motion was normal and Plaintiff demonstrated full strength.[20]

On February 17, 2006, Plaintiff again returned to Alpine Spine, Sports, and Rehabilitation complaining of a new episode of thoracic pain.[21]  Plaintiff was found to have a decreased range of motion of the lumbar spine.[22]  Plaintiff was again prescribed pain medication and was encouraged to consider vocational rehabilitation.[23]

---

[14]*Id*. at 260.

[15]*Id*.

[16]*Id*. at 261.

[17]*Id*.

[18]*Id*. at 257.

[19]*Id*.

[20]*Id*.

[21]*Id*. at 256.

[22]*Id*.

[23]*Id*.

Plaintiff saw Rhonda Lee, PA/C at Health Clinics of Utah beginning on April 26, 2007.[24] Plaintiff reported chronic neck and back pain.[25]  An examination revealed full strength in all extremities, full range of motion in the spine, neck, and shoulders with some pain reaction.[26] Plaintiff was diagnosed with chronic back pain with myalgias and was advised against significant lifting and prolonged sitting or standing.[27]  Ms. Lee indicated that Plaintiff was capable of some light duty work activities with the opportunity to change positions as needed.[28]

Justin R. Johnsen, M.D., evaluated Plaintiff on June 9, 2007.[29]  After conducting an examination, Dr. Johnsen concluded that Plaintiff had "mild back problems."[30]  Dr. Johnsen opined that these problems would limit Plaintiff's ability to lift heavy objects and ambulate long distances.[31]

Dennis Taggart, M.D., reviewed the records and assessed Plaintiff's physical residual functional capacity in July 2007.[32]  Dr. Taggart concluded that Plaintiff could lift 50 pounds

---

[24]*Id*. at 483.

[25]*Id*.

[26]*Id*.

[27]*Id*.

[28]*Id*.

[29]*Id*. at 375.

[30]*Id*. at 378.

[31]*Id*.

[32]*Id*. at 404-13.

occasionally, 25 pounds frequently, stand and/or walk for about six hours in an eight-hour day, and sit for about six hours in an eight-hour day.[33]

William F. Brandt, M.D., evaluated Plaintiff on July 31, 2007.[34]  Dr. Brandt diagnosed ongoing neck and back pain with mild minimal degenerative changes in the cervical spine.[35] There was "no evidence of radiculopathy or other more serious complaints."[36]  Dr. Brandt found "no structural reasons to put limits on" Plaintiff, but stated that she should have a maximum lift of 20 pounds, an infrequent lift of 15 pounds, and a frequent lift of 10 pounds.[37]  Dr. Brandt did not believe there was "objective evidence to place any more substantial restrictions on" Plaintiff.[38]

Plaintiff saw Rhonda Lee at various times through 2008.  On November 17, 2008, Ms. Lee opined that Plaintiff was "capable of light duty work activities, perhaps on a reduced hour basis."[39]  However, she recommended against any lifting, repetitive bending or stooping, and prolonged sitting or standing.[40]

---

[33]*Id*. at 407.

[34]*Id*. at 417-20.

[35]*Id*. at 420.

[36]*Id*.

[37]*Id*.

[38]*Id*.

[39]*Id*. at 470.

[40]*Id*.

Dr. Richard Gregoire examined Plaintiff on November 26, 2008.[41]  Dr. Gregoire found

normal reflexes, normal strength, and generally intact range of motion.[42]  In connection with this

examination, Dr. Gregoire completed a form to be used in Plaintiff's disability appeal.[43]  Dr.

Gregoire stated that Plaintiff had "marked restrictions of activities of daily living," "marked

difficulty in maintaining social functioning," and "deficiencies of concentration, persistence or

pace" as a result of her pain.[44]  Dr. Gregoire also opined that Plaintiff could stand and or sit for

less than 15 minutes at a time, that she could lift five pounds on an occasional basis, and could

not lift any weight on a frequent basis.[45]

    *2.*    *Mental Health*

Plaintiff obtained mental health treatment at Weber Human Services from February to

June 2004.[46]  On February 24 , 2004, Plaintiff was diagnosed with major depressive disorder

(recurrent, moderate), borderline personality disorder, and was assigned a GAF score of 55.[47]  In

---

[41]*Id*. at 469.

[42]*Id*.

[43]*Id*. at 467-68.

[44]*Id*. at 467.

[45]*Id*.

[46]*Id*. at 326-55.

[47]*Id*. at 350.

April 2007, Plaintiff returned to Weber Human Services and was again diagnosed with major depressive disorder (recurrent, moderate) and assigned a GAF score of 55.[48]

In March 2007, Plaintiff was seen by Julianne Koer, L.C.S.W., on two occasions.  Ms. Koer indicated that Plaintiff had symptoms of depression and anxiety.[49]  Ms. Koer diagnosed Plaintiff with major depressive order (recurrent, moderate to severe) and anxiety disorder.[50]  Ms. Koer stated that Plaintiff's condition "may improve somewhat" with medication and treatment.[51]

Tanya Colledge, Psy.D., evaluated Plaintiff in June 2007.[52]  Dr. Colledge diagnosed Plaintiff with major depressive disorder (recurrent, moderate) and anxiety disorder, and assessed a GAF score of 60.[53]  Dr. Colledge stated that Plaintiff "appears capable of completing some work tasks," but "appears to have an impaired capacity to tolerate work stress."[54]

Patricia Truhn, Ph.D., a state agency psychological consultant, completed a Psychiatric Review Technique form on July 5, 2007.[55]  Dr. Truhn found that Plaintiff had depression, an

---

[48]*Id*. at 324.

[49]*Id*. at 371.

[50]*Id*. at 373.

[51]*Id*.

[52]*Id*. at 380-83.

[53]*Id*. at 383.

[54]*Id*.

[55]*Id*. at 386-99.

anxiety disorder, and a possible personality disorder.[56]   However, Dr. Truhn found that these issues caused no restrictions on activities of daily living, no difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no extended episodes of decompensation.[57]   In a Mental Residual Functional Capacity Assessment, Dr. Truhn concluded that Plaintiff was not significantly limited in 19 of 20 areas of work-related mental functioning.[58]   Dr. Truhn concluded that Plaintiff was capable of low-stress work.[59]

Plaintiff sought treatment at Bear River Mental Health by Dr. Holli Archibald from June to November 2008.[60]   Dr. Archibald later completed a form relating to Plaintiff's disability claim.[61]   Dr. Archibald diagnosed Plaintiff with major depressive disorder (single episode, moderate) and dysthymic disorder, and assessed a GAF score of 45.[62]   Dr. Archibald opined that Plaintiff had moderate restrictions of activities of daily living and moderate difficulty in maintaining social functioning.   Dr. Archibald further noted moderate limitations in six areas of work-related mental functioning.[63]

---

[56]*Id.* at 389-393.

[57]*Id.* at 396.

[58]*Id.* at 400-01.

[59]*Id.* at 384.

[60]*Id.* at 446-66.

[61]*Id.* at 444-45.

[62]*Id.* at 444.

[63]*Id.* at 445.

Craig K. Swaner, Ph.D., examined Plaintiff on December 5, 2008.[64]  Dr. Swaner diagnosed a pain disorder and major depressive disorder, and assessed a GAF score of 50.[65]  Dr. Swaner stated that "[g]iven her current pain problems and lack of endurance exhibited during the course of the evaluation the examiner believes that she would not be able to maintain a regular employment schedule.  She certainly wouldn't have the endurance to make it through a regular work day, let [alone] a work week."[66]  Additionally, Dr. Swaner found that her depression was "impairing her ability to be productive on a daily basis."[67]  Dr. Swaner concluded that it would be difficult to see Plaintiff as a successful employee.[68]

C.      HEARING TESTIMONY

At the hearing before the ALJ Plaintiff testified that she injured her back at work in 2005 when she lifted a 44 gallon barrel filled with wet clothes.[69]  Plaintiff continued to work until March 2007 when her back "just wouldn't do it no more."[70]

---

[64]*Id*. at 484-93.

[65]*Id*. at 493.

[66]*Id*. at 491.

[67]*Id*.

[68]*Id*. at 493.

[69]*Id*. at 20.

[70]*Id*. at 13.

Plaintiff described her pain as going across her lower back and radiating into her hips and legs, and that the pain is constant.[71]  Plaintiff also stated that she felt pain in her neck, especially when she turned her head from left to right.[72]  Plaintiff testified that standing, walking, laying down, and lifting or carrying heavy things all aggravated her condition.[73]  Plaintiff stated that she could sit for 15 minutes at a time, stand for 5 minutes, and walk about 20 feet.[74]  Plaintiff thought she could lift approximately 5 pounds and could go about halfway up a flight of stairs before needing to stop.[75]

Plaintiff also provided testimony about her mental health concerns, stating that she sometimes feels worthless and hopeless.[76]  Plaintiff stated that her medication helped ease these symptoms.[77]  Plaintiff further testified that she suffered panic attacks from time to time.[78]

When asked to describe an average day, Plaintiff stated that she spent most of the day in bed or sitting in a recliner.[79]  Plaintiff stated that she will watch television, do a puzzle, or play a

---

[71]*Id*. at 21-22.

[72]*Id*. at 29.

[73]*Id*. at 23.

[74]*Id*. at 24-25.

[75]*Id*. at 25.

[76]*Id*. at 36.

[77]*Id*. at 37.

[78]*Id*. at 38-39.

[79]*Id*. at 39-40.

handheld game.[80]  As for meals, Plaintiff stated that she ate whatever could be quickly prepared.[81]

Plaintiff stated that she would see her sister once or twice a week and would go with her brother

to have coffee about once a week.[82]  Plaintiff testified that she was able to do laundry, wash the

dishes, and go grocery shopping.[83]  Plaintiff also stated that on occasion she would do things like

vacuum, mop or sweep.[84]  Plaintiff stated that she could drive and drove herself to her medical

appointments about once a week.[85]  Plaintiff testified that she tried to exercise as much as she

could and was able to attend to her personal hygiene.[86]

A vocational expert testified at the administrative hearing.  The vocational expert

identified Plaintiff's past relevant work as a certified nurse's aide and a laundry worker.[87]  The

ALJ asked the vocational expert to consider a person the same age as Plaintiff with the same

educational and work experience who was limited to unskilled, entry-level, simple work who: (1)

could lift 10 pounds occasionally and less than 10 pounds frequently; (2) stand or walk for two

hours out of an eight-hour day and sit for six hours in an eight-hour day; (3) could stand for five

---

[80]*Id*. at 40.

[81]*Id*.

[82]*Id*. at 41.

[83]*Id*. at 42.

[84]*Id*.

[85]*Id*.

[86]*Id*. at 43.

[87]*Id*. at 49.

minutes at a time and sit for 15 minutes at a time; and required a sit/stand option.[88]  Based on this

hypothetical, the vocational expert testified that Plaintiff's previous employment was eliminated,

but that she could work as an addresser, semiconductor bonder, and a touch-up screener.[89]  The

vocational expert testified that his opinion that these jobs could be performed by a person who

required a sit/stand option was based on his years of experience as a vocational rehabilitation

counselor.[90]

D.      THE ALJ'S DECISION

        The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's

claims.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since March 21, 2007, the alleged onset date.[91]  At step two, the ALJ found that Plaintiff

suffered from the following severe impairments: major depressive disorder, dysthymia, cervical

degenerative disc disease, chronic low back pain, and obesity.[92]  At step three, the ALJ found that

Plaintiff did not have an impairment or combination of impairments that met or equaled a listed

impairment.[93]  At step four, the ALJ found that Plaintiff was unable to perform any of her past

---

[88]*Id*. at 49-52.

[89]*Id*. at 53-54.

[90]*Id*. at 55.

[91]*Id*. at 66.

[92]*Id*.

[93]*Id*. at 67-70.

work.[94]  At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.[95]  As a result, the Court found that Plaintiff was not disabled.

### III.  DISCUSSION

Plaintiff raises three arguments in her brief: (1) the ALJ erred at his step five determination; (2) the ALJ improperly rejected the opinions of Plaintiff's treating and examining medical providers; and (3) the ALJ improperly rejected Plaintiff's subjective complaints.  The Court agrees that the ALJ failed to properly address the opinions of Dr. Gregoire.  Therefore, the Court will reverse and remand this matter to the agency.  Because Plaintiff's other issues may be affected by the determination on remand, the Court will not address them and will limit its discussion to whether the ALJ properly addressed the opinions of Plaintiff's treating and examining medical providers.

The Tenth Circuit has stated:

> Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons in [the] notice of determination or decision for the weight assigned to a treating physician's opinion.  Further, the notice of determination or decision must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.[96]

---

[94]*Id*. at 72.

[95]*Id*. at 73-74.

[96]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotation marks and citations omitted).

When reviewing the opinions of treating sources, the ALJ must engage in a sequential analysis.[97]  First, the ALJ must consider whether the opinion is well-supported by medically acceptable clinical and laboratory techniques.[98]  If the ALJ finds that the opinion is well-supported, then he must confirm that the opinion is consistent with other substantial evidence in the record.[99]  If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[100]

This does not end the analysis, however.  Even if a physician's opinion is not entitled to controlling weight, that opinion must still be evaluated using certain factors.[101]  Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[102]

---

[97]*Id.*

[98]*Id.*

[99]*Id.*

[100]*Id.*

[101]*Id.*

[102]*Id.* at 1301 (quoting *Drapeau v. Massanri*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

After considering these factors, the ALJ must give good reasons for the weight he ultimately assigns the opinion.[103]  If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.[104]  With this standard in mind, the Court turns to consideration of the ALJ's treatment of both Dr. Swaner and Dr. Gregoire.

A.      DR. SWANER

As discussed above, Dr. Swaner conducted a psychological examination of Plaintiff at the request of her attorney.[105]  During his examination, Dr. Swaner administered the following techniques: MMPI II, Beck Inventory, Automatic Thoughts Questionnaire, Sentence Completion Test, Mental Status Exam, and Clinical Interview and Observation.[106]  On the Beck Inventory Plaintiff "achieved a score of 40 which would indicate a severe level of depression."[107]  "The results of the MMPI indicate primarily depressive difficulties as well."[108]  As to the mental status exam, Dr. Swaner found Plaintiff to be credible.[109]  Dr. Swaner stated that "[g]iven her current pain problems and lack of endurance exhibited during the course of the evaluation the examiner believes that she would not be able to maintain a regular employment schedule.  She certainly

---

[103]*Id*.

[104]*Id*.

[105]R. at 484-93.

[106]*Id*. at 484.

[107]*Id*. at 488.

[108]*Id*.

[109]*Id*. at 491.

wouldn't have the endurance to make it through a regular work day, let [alone] a work week."[110] Additionally, Dr. Swaner found that Plaintiff's depression was "impairing her ability to be productive on a daily basis."[111]

Dr. Swaner diagnosed a pain disorder and major depressive disorder, and assessed a GAF score of 50.[112]  Dr. Swaner stated his belief that Plaintiff's depression had gotten worse and that her health and life situation had deteriorated significantly.[113]  Dr. Swaner concluded that it would be difficult to see Plaintiff as a successful employee.[114]

In his decision, the ALJ gave the evaluation of Dr. Swaner "less weight."[115]  The ALJ noted that Plaintiff was the primary source of Dr. Swaner's information and, "[t]hough he did administer the MMPI . . . he did not report the validity scale results or provide any discussion of the MMPI findings."[116]  The ALJ further noted that the MRI evidence and examination findings did not support Plaintiff's complaints of neck and back pain and did "not support significant orthopedic pathology or limitations."[117]  The ALJ also noted that the other psychologists who had

---

[110]*Id.*

[111]*Id.*

[112]*Id.* at 493.

[113]*Id.*

[114]*Id.*

[115]*Id.* at 69.

[116]*Id.*

[117]*Id.*

examined Plaintiff indicated that she had only mild limitations.  The ALJ noted that Dr. Swaner

"seems to be the only psychologist or physician who believes the claimant is nearly as bad off as

she alleges."[118]

The Court finds that the ALJ applied the correct legal standard and his decision to give

little weight to Dr. Swaner is supported by substantial evidence.  As set forth above, the ALJ is

required to engage in a sequential analysis.  First, the ALJ must consider whether the opinion is

well-supported by medically acceptable clinical and laboratory diagnostic techniques.  In this

case, the ALJ noted that Dr. Swaner's opinion was not supported by the other evidence in the

record.  Indeed, Dr. Swaner's limitations are much more severe than those placed on Plaintiff by

other examining and treating sources.  As a result, there is substantial evidence upon which the

ALJ could find that Dr. Swaner's opinion was not entitled to controlling weight.

The ALJ was then required to consider those factors set forth above.  However, there is

no requirement that the ALJ expressly apply each of these factors in deciding what weight to give

a medical opinion.[119]  In this case, the Court finds that the ALJ provided good reasons for the

ultimate weight he assigned to Dr. Swaner's opinions.  Specifically, the ALJ pointed to the fact

that Dr. Swaner's primary source of information was Plaintiff and that Plaintiff's claims were not

supported by the evidence in the record.  As stated, the ALJ must consider the degree to which

the opinion is supported by the relevant evidence and the consistency between the evidence and

the record as a whole.  Further, the ALJ noted that, though Dr. Swaner administered the MMPI,

---

[118]*Id.*

[119]*See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

he failed to report the validity scale results or provide any discussion of the MMPI findings.  This goes to the issue of the kind of examination and testing performed.  Finally, the ALJ noted that Dr. Swaner only examined Plaintiff once at the request of her attorney, which goes to the length of the treatment relationship.  These factors provide substantial evidence upon which the ALJ could properly assign Dr. Swaner's opinions "less weight."

B.      DR. GREGOIRE

While the ALJ applied the correct legal standard in assessing the opinions of Dr. Swaner, he did not do so with regard to Dr. Gregoire.  The ALJ offered no explanation for the weight, if any, he gave to the opinion of Dr. Gregoire.  The ALJ's only explanation of Dr. Gregoire's opinions is contained in the ALJ's discussion of whether Plaintiff's impairments met or equaled a listed impairment.  The ALJ noted Dr. Gregoire's limitations, but found that they fall "short of endorsing pain as equaling the 1.04 listing criteria."[120]  The ALJ further found "that the treating doctor's assessment was not intended to indicate the claimant's actual functional limitations caused by her alleged pain."[121]

Absent from the ALJ's discussion of Dr. Gregoire's opinions is any indication of what weight the ALJ afforded to those opinions.  Under the standard set forth above, the ALJ's discussion of Dr. Gregoire's opinions is insufficient.  As stated, the ALJ must give good reasons for the weight he assigns to a treating physician's opinion.[122]  Further, the ALJ's "decision must

---

[120]R. at 67.

[121]*Id.*

[122]*Watkins*, 350 F.3d at 1300.

be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[123]  Here, the Court has nothing before it to indicate what weight the ALJ gave to Dr. Gregoire's opinions.  Without this, the Court "cannot meaningfully review the ALJ's determination."[124]  Therefore, this matter must be reversed and remanded so that the ALJ may consider the opinions of Dr. Gregoire under the appropriate standard.

## IV.  CONCLUSION

It is therefore

ORDERED that the ALJ's decision is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the purposes of conducting additional proceedings as set forth herein.

The Clerk of Court shall enter judgment remanding this case and shall close this case forthwith.

DATED   June 15, 2012.

BY THE COURT:

_____

TED STEWART
United States District Judge

---

[123]*Id.*

[124]*Id.*

20